UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
VEMICS, INC.,

               Plaintiff,

        - against -

RADVISION, LTD.,

               Defendant.
--------------------------------------------------------x
RADVISION, LTD.,

               Third-Party Plaintiff,

        - against -

IRON MOUNTAIN INTELLECTUAL
PROPERTY MANAGEMENT, INC.,

               Third- Party Defendant.
--------------------------------------------------------x

07 Cv. 0035 (CLB) (LMS)

***Memorandum and Order***

Brieant, J.

       Before the Court in this diversity case for breach of contract is a motion by Third Party

Defendant Iron Mountain Intellectual Property Management ("Iron Mountain"), heard and fully

submitted for decision on May 11, 2007, to dismiss the Third-Party Complaint in favor of

Arbitration (Doc. No. 18).  Plaintiffs sue for tortious interference with contract and seek

declaratory judgment, an accounting, and a permanent injunction.  Plaintiff Vemics and

Defendant Radvision oppose third party Defendant's motion, and Radvision has Counter-

Claimed against Vemics.


       The following facts are not disputed, or presumed true for purposes of this motion only.

In December 2004, Vemics and First Virtual Communications ("FVC") entered into a non-exclusive License entitled "Non-Exclusive Service Provider Agreement," by which Vemics purchased a license to use FVC's "Click to Meet" conferencing software and related services. The License Agreement provided that the source code for the software be placed in escrow with Iron Mountain, and that it would be released to Vemics under specified "release conditions." In compliance with the License Agreement, FVC also entered into a separate standard Escrow Agreement with Iron Mountain for the source code and related properly. Both the License Agreement and the Escrow Agreement are governed by California law.

FVC filed for bankruptcy on March 11, 2005, and the Bankruptcy Court approved an asset sale and transfer of contracts from FVC to Radvision. Accordingly, Radvision became the successor in interest to FVC's rights and duties under the License Agreement and the Escrow Agreement.

Vemics approached Iron Mountain in January 2006, demanding release of Radvision's proprietary source code from the escrow. Vemics apparently claimed that FVC's bankruptcy filing the previous year constituted a "release condition" under the Escrow Agreement. Radvision claims that there was no valid basis for Vemic's demand, but that Iron Mountain nevertheless declared in writing that Vemics was entitled to the source code, and that Iron Mountain had actually lost the source code.

The interactions between Vemics and Iron Mountain were apparently not at that time

2

disclosed to Radvision, and Radvision did not learn that Vemics had been attempting to obtain

Radvision's source code from escrow until Radvision was served with process in a California

State Action in September 2006, in which Iron Mountain sued Radvision and Vemics for

"interpleader, declaratory relief and contractual indemnity."

On August 9, 2006, Vemics sued Iron Mountain in the Supreme Court of the State of

New York (County of Rockland), claiming that it was entitled to receive Radvision's source

code from escrow, seeking an order directing Iron Mountain to turn over the source code, and

claiming over $100 million in damages.  The New York State action was stayed earlier this year

because

the key records and witnesses were located predominantly in California, as was the underlying

bankruptcy proceeding.  Radvision is not a party to the New York State action.

As earlier noted, on September 22, 2006, Iron Mountain filed an action in the Santa Clara

Superior Court in California for interpleader, declaratory relief and indemnity against Radvision

and Vemics.   In the California action, Iron Mountain asked the Court to resolve the dispute

between Radvision and Vemics.   In November of 2006, Radvision moved in the California

action to compel arbitration under the arbitration clauses in the Agreements, apparently asking

the Court to decide whether all of the parties' claims, cross-claims and counterclaims should be

submitted to arbitration, so as to consolidate the entire set of disputes.  Vemics and Iron

Mountain opposed arbitration on grounds including the "opt-out" provision in the Agreement.

By letter dated December 22, 2006, Radvision terminated the License Agreement, based on Vemics' claimed failure to pay over $2 million in license fees, and demanded that Vemics cease selling products incorporating the Click to Meet software.  On December 28, 2006, Radvision notified Iron Mountain of the termination and directed Iron Mountain to return the Click to Meet source code to Radvision.  Although Iron Mountain had previously asserted the source code was lost, it now responded that since it believed there were competing demands for the source code, that it would not be released until the open cases were adjudicated, or otherwise resolved.

On January 3, 2007, while the California motion was pending, Vemics filed this case against Radvision, and on February 20, 2007, Radvision asked the California Court to stay the California action pending resolution of this action.

On February 19, 2007, Radvision answered the Complaint in this action and also filed counterclaims against Vemics.  On March 5, 2007, Radvision filed a Third Party Complaint against Iron Mountain, as an indispensable party, and also asserted claims for breach of contract, breach of fiduciary duty, and negligence, seeking declaratory and equitable relief.  When Radvision then asked the California Court to stay proceedings there, the California Court did so.

Radvision's claims against Iron Mountain arise only out of the Escrow Agreement and the relationship of the parties thereunder.

4

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)). The Federal Arbitration Act creates a  "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

*PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir. 1996)

Pursuant to section 4 of the Federal Arbitration Act, the court:

shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4

When deciding whether the parties agreed to arbitrate a certain matter ....[courts].... should apply ordinary state-law principles that govern the formation of contracts.

*First Options v. Kaplan*, 514 U.S. 938, 944 (U.S. 1995).

Article 7.4 of the Escrow Agreement provides in relevant part that:

Any dispute relating to or arising from this Agreement *shall be submitted to, and settled by* arbitration by a single arbitrator chosen by the San Diego Regional Office for the American Arbitration Association in accordance with the Commercial Rules of the American Arbitration Association. The arbitrator shall apply California law....If, however, Depositor and/or Preferred Beneficiary *refuses to submit to arbitration*, the *matter shall not be submitted to arbitration* and [Iron Mountain] may submit the matter to any court of competent jurisdiction for an interpleader or similar action.

*Chapman Ex. B, Escrow at 7.4.*

As clearly as the contract language provides that disputes "shall be submitted to and

settled by arbitration," in the very same paragraph, using the same imperative language of

"shall,"the contract provides that if the Depositor refuses to submit to arbitration, the matter shall

not be submitted to arbitration.  Reading the document as a whole, as required both under

California and New York law, and giving meaning to all the "plain language, the agreement

provides that the Depositor may refuse to go to arbitration and provides that in such event the

dispute will not go to arbitration.

Clearly, Radvision, as successor in interest of First Virtual, has refused to go to

arbitration, which results in denial of the motion to compel arbitration.  As an additional ground

for such denial, this Court notes that when Iron Mountain sued Radvision in California, and

resisted Radvision's motion to arbitrate, Iron Mountain waived its right to compel arbitration.

Also, this Court perceives no logical basis to reject the prior Order of the Supreme Court

of California, County of Santa Clara, in *Iron Mountain Intellectual Property Management, Inc.*

*v.*

*Vemics, Inc. Radvision, Ltd., et als.,* Case No. 1-06-CV-071682, dated March 29, 2007, which

holds in relevant part as follows:

> RADVISION seeks deferral of a ruling [on Radvision's Petition to Compel Arbitration]
> pursuant to Code of Civil Procedure section 1281.2(c), which authorizes deferral if
> the court determines that there are other issues between petitioner and respondent
> which are not subject to arbitration and which are the subject of a pending action,
> and that a determination of such issues may make the arbitration unnecessary.
>
> The Court finds that there are other issues between the parties which are not subject
> to arbitration, but which are the subject of pending federal court action [in S.D.N.Y.].
> A determination of those issues may make arbitration unnecessary.  Therefore,
> RADVISION's request for deferral is GRANTED.  A ruling on RADVISION's

6

Petition to Compel Arbitration is deferred, and further proceedings in this action
are stayed, pending the outcome of the federal court action.


Accordingly, for all the reasons set forth above, the Motion to Compel Arbitration

(Doc. 18) is denied in all respects.  This Court concludes as a matter of law that upon the entry of

a final judgment in this case, there will be nothing left to arbitrate.  A final pre-trial conference

in this case has been set for October 19, 2007.  Counsel are directed to proceed forthwith with

their discovery, in order that the case may be ready for trial when reached.

X




X




X




X




X

7

SO ORDERED.

Dated: White Plains, New York
       May 16, 2007

_____

Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
          May 16, 2007

_____
Charles L. Brieant, U.S.D.J.